MARY M. DUSENBERRY, Appellant, *v.* NEW YORK, WESTCHESTER AND
CONNECTICUT TRACTION COMPANY, Respondent.

*Conditions imposed by a highway commissioner upon the use of a highway by a rail-
road company — limitation of time for the completion of the work — the violation
thereof does not of itself work a forfeiture — imposition of conditions where the
statute has regulated the subject-matter — when the railroad company must show the
consents.*

Under section 93 of the Railroad Law, providing that "The local authorities may,
in their discretion, make their consent to depend upon any further conditions
respecting other or further security or deposit, suitable to secure the construc-
tion, completion and operation of the railroad within any time not exceeding
the period prescribed in this article," viz., three years after the consents have
been obtained, a commissioner of highways of a town may, as a condition of
granting on May 12, 1896, a consent to the construction of the railroad, provide
that if the road is not completed by January 1, 1897, "then this franchise shall
be forfeited, and the rights and privileges granted by it shall cease and deter-
mine without any action or proceeding in law or otherwise."

The consent, although broad enough to work a forfeiture without any legal pro-
ceedings, will not be given that force and effect; and in an action to establish
the forfeiture, because of a non-compliance with such condition, the railroad
company may show the existence of facts constituting a legal excuse for its
non-compliance, or a waiver thereof, or an estoppel precluding the person
seeking to take advantage of the forfeiture from insisting thereon.

Where the affidavits, used upon a motion for an injunction restraining the opera-
tion of a railroad, specify the details wherein the railroad company has failed
to obtain the consent of the owners of two-thirds in value of the property
bounded upon the street in which it is constructing its road, the burden is upon
the railroad company to make clear proof that it has the necessary consents.

Where the Legislature, in the exercise of its sovereign power, has regulated the
subject-matter, it is not competent for persons charged with the duty of giving
their consent to the performance of a particular act to impose other or different
conditions.

APPEAL by the plaintiff, Mary M. Dusenberry, from an order of
the Supreme Court, made at the Westchester Special Term and
entered in the office of the clerk of the county of Westchester on
the 2d day of November, 1899, denying her motion to continue a
temporary injunction.

*Alexander Cameron,* for the appellant.

*James C. Church,* for the respondent.

HATCH, J.:

This is a motion upon the return of an order to show cause why a temporary injunction granted herein restraining the defendant from constructing or operating its railroad on any street or avenue in the town of Eastchester, in the county of Westchester, should not be continued. The motion to continue the temporary injunction is rested upon two grounds: *First*, that the consent given by the commissioner of highways of the town of Eastchester to the predecessor of the defendant, to construct, maintain and operate its railroad, was subject to a condition that such road, its branches and extensions, should be completed and in running order by the 1st day of January, 1897, else the franchise based upon such consent should cease and determine. It is claimed that this condition was not complied with, and in consequence the predecessor of the defendant forfeited its right to construct the road; and that the defendant has acquired no other or different right than it possessed, and is, therefore, without authority in law to construct its road. *Second*, that even though it possesses such authority, yet that it has failed to obtain the consents of the owners of two-thirds in value of the property bounded upon the street where it is presently engaged in constructing its road. If either or both of these contentions are well founded, then it follows that the plaintiff established a case entitling her to have the temporary injunction continued. The consent of the commissioner of highways of the town of Eastchester was given on the 12th day of May, 1896, and was accepted by the North Mount Vernon Railway Company, the predecessor of the defendant, on the twenty-seventh day of the same month. It was provided in the 12th clause of such consent as follows: "That if such branches or extensions of said road are not completed and in running order by the first day of January, eighteen hundred and ninety-seven, then this franchise shall be forfeited, and the rights and privileges granted by it shall cease and determine without any action or proceeding in law or otherwise." By the 13th clause of the consent it was provided that such franchise should become binding upon the town of Eastchester upon the acceptance by said company within thirty days of the obligations and conditions thereof, and that upon such acceptance the franchise granted thereby should constitute the contract and be the measure of the rights and liabilities

of the town and of the company, its successors and assigns. It is conceded in the record that compliance with the conditions of this franchise was not made by the North Mount Vernon Railway Company nor by the defendant. If, therefore, this condition be such as the highway commissioner of the town had the right to impose, and if compliance therewith has not been waived, and if there exist no facts upon which non-compliance by the railroad company can be excused, then it follows that this defendant has no right in the street and no franchise to construct and operate its railroad thereon. So far as is disclosed by the papers in opposition to this motion, no excuse whatever is made or attempted to be made for the non-compliance with the condition thus imposed as matter of fact. The defendant rests its claim solely upon the ground that the condition imposed is void; and it must stand or fall, so far as the present right to an injunction is concerned, upon its ability to maintain this proposition.

The determination below in favor of the defendant proceeded upon the ground that the consent vested in the defendant an absolute franchise, which, having been once vested, could not be divested by a condition subsequent, and that a breach of such condition did not work a forfeiture of the franchise. This holding proceeded upon the general doctrine that the breach of a condition subsequent, which is *malum prohibitum* only, does not defeat the vesting of an estate, as it is in its nature repugnant to the estate which has been granted; and this doctrine is undoubtedly the law as stated by the learned court below. It does not follow, however, as is recognized by the learned court, that executory conditions which the party has be the right to impose upon the right or estate which it grants, may not enforced, or that upon failure to perform such conditions the grantee does not become divested of the estate which he has received. The court held, however, that the condition which we have heretofore quoted was not within the power of the highway commissioner of the town to impose; that for that reason the condition was void, and the consent vested in the railroad company an absolute franchise. This ruling proceeds upon the ground that by virtue of the provisions of sections 93 and 99 of the Railroad Law (Laws of 1890, chap. 565) the railroad is to be constructed within three years after the consents therefor have been granted, and the conclusion is reached that the statute itself furnishes the only limitation as to

time of construction which may be lawfully imposed. Section 93 of the Railroad Law (Laws of 1890, chap. 565, as amd. by Laws of 1893, chap. 434) provides : "The local authorities may, in their discretion, make their consent to depend upon any further conditions respecting other or further security or deposit, suitable to secure the construction, completion and operation of the railroad within any time not exceeding the period prescribed in this article," etc. Section 99 provides that if a railroad shall not complete the construction of its railroad within three years after obtaining the necessary consents, "its right, privileges and franchises shall cease and determine." We understand the rule to be that where the Legislature, in the exercise of its sovereign power, has regulated the subject-matter, it is not competent for other persons charged with the duty of giving consent to the performance of a particular act to impose other or different conditions, as such conditions will be deemed opposed to a sound public policy. (*Beekman* v. *Third Avenue R. R. Co.*, 153 N. Y. 144.)

The question which confronts us is whether the Legislature in the exercise of its authority, has imposed an absolute rule of limitation as to the time within which a railroad shall be constructed after it has obtained the consent of the proper authorities for its construction, or whether the persons or body authorized to give the consent may impose a condition that it shall be constructed within a shorter time. It is to be observed in construing this statute that by its terms a forfeiture may be worked unless the railroad constructs within the period limited thereby. There is nothing in the statute which places any limitation whatever on the time when the construction must be made. Its provision is, that unless within the given period it does construct, such failure may work a forfeiture. If the persons or body possessed of the power to give consent may not impose any condition, then such persons or body are limited in authority to grant or deny. But such is evidently not the purpose of the statute, for therein is reserved the right to secure the construction, completion and operation of the railroad within any time not exceeding the period prescribed by the statute, and also upon such further conditions as will be for the public interest. It would seem as if, by the very language of the statute, a condition might be imposed by the persons or body giving the consent in respect to

the particular matter of construction, the only limitation thereon being that they would not be authorized to extend the time beyond three years, the period prescribed by the statute; and such seems to be the clear reading of section 93 of the Railroad Law. If, however, we limit the authority granted by the statute to impose the condition to such as may be for the public interest, which is clearly conferred, then we come to the consideration of whether the imposition of a condition that the railroad shall be constructed within a shorter period than that provided by the statute is against public policy. So far from being in contravention of the public policy of the State, we think it may clearly be upheld thereunder. The evident purpose of the statute, which provides that a forfeiture may be worked if the construction be not made in three years, was, among other things, to prevent speculation in franchises by corporations which had no intention of constructing the road when the grant was obtained, but held the same for the purpose of sale to those desiring to construct. In practice, this has prevented the construction of a road which the welfare of the public required, corporations desiring to construct have been denied the right by reason of such obstacle, the community has been deprived of the benefits which it expected would accrue from the grant, and the basis of benefit to the public, upon which the grant rests and which furnishes the only basis upon which it may be supported, is entirely defeated. The common history connected with the acquirement of franchises from public bodies furnishes abundant authority in support of this statement. It is not difficult to see that conditions may exist where the public demand for the construction of a railroad is urgent, and where the necessities of the community require that it be immediately done. The public have the right to demand that, as they give a franchise valuable in character, their needs and necessities shall be accommodated as soon as reasonable diligence will permit. In many cases several corporations are suppliants for a franchise, and it would be singular, indeed, if a community might not impose a condition by which its welfare would be promoted if it could find among those suing for the franchise one that would construct with more dispatch than the statute required, to prevent the working of a forfeiture. The controlling motive for the granting of a consent might be the speedy construction of the road, and to hold that a community might not impose

such a condition would be to deny it the right to contract for the public interest. To claim that such a condition is against the interest of the community, and, therefore, void as against public policy, is to ignore the facts and vest in the railroad company power to defeat the very object which the interest of the community requires for its good.

It is to be borne in mind that no railroad company is required to take any franchise; no compulsory process can be issued which compels it to construct a railroad unless it voluntarily assumes such obligation. It does not commend itself to good morals to permit a corporation to accept a franchise with a full understanding of its terms, and which it has been the moving party in obtaining, and then permit it to violate the condition upon which it was granted, deprive a community of that which it had the right to expect, inconvenience the public, and say that the condition imposed was void, as being against public policy.

As we view the statute and the purpose which it sought to accomplish, we think that its proper construction is to confer upon the persons or body authorized to give the consent the authority to impose a condition requiring it to construct its railroad within a less period than the limit prescribed by the statute; and as the railroad is in no sense misled, and is the moving power in securing the consent, it does not lie in its mouth to say that the condition which it voluntarily assumed is void and unenforcible. We have recently had occasion to examine this question in principle, and have reached a conclusion in consonance with the views above expressed. (*Gaedeke* v. *Staten Island Midland R. R. Co.*, 43 App. Div. 514.) In adopting such view we but follow the case of *People ex rel. West Side St. R. Co.* v. *Barnard* (110 N. Y. 548), where the Court of Appeals announced this doctrine in the following language: "Under this act and under the constitutional provisions applicable to the construction of street railways, the municipal authorities have the absolute power to grant or withhold their consent to the construction of street railways; and they may impose any conditions, however onerous and difficult to perform, which seem to them, in the exercise of their discretion, to be proper, as the terms upon which their consent will be given." And further: "If it should turn out that it could not comply with the terms of the grant, in the respect mentioned,

the result would simply be that it would be exposed to the forfeiture of its franchises and rights."

The court below based its decision upon *Matter of Kings Co. Elevated R. R. Co.* (105 N. Y. 97), and the learned counsel for the respondent urges this case upon our attention on this appeal as authority conclusive in his favor. We think the cases are clearly distinguishable. In that case the statute vested in the commissioners appointed under the act authority to determine the necessity of the proposed railroad, to locate the same and to impose a limitation as to the time in which the road should be constructed. The common council of the city in granting its consent undertook to impose other and different conditions, and the court held that these conditions, under the scheme of the statute, were unauthorized, and consequently void. The court, however, held that, as to the failure to construct those branches of the road within the time prescribed by the commissioners, it forfeited the franchise which the company obtained; that as to other routes to which no time limit was fixed by the commissioners there was no forfeiture of any rights; and as the proceeding in obtaining consents of property owners was delayed by litigation, it furnished an excuse which prevented the working of a forfeiture as to other branches not constructed within the limitation of time. We find nothing therein that at all militates against the construction which we have placed upon this statute. As we have seen, the time limit of the statute within which the road must be constructed is to prevent the working of a forfeiture; and by virtue of the authority vested in the persons or body authorized to give the consent, conditions may be imposed to secure construction within any time not exceeding the period prescribed by the statute; and as all conditions in furtherance of the public interest may be imposed, an entirely different scheme is presented from that which was under consideration by the court in the case last cited.

While the language of the 12th clause of the consent is broad enough in terms *ipso facto* to work a forfeiture without any legal proceeding, yet we apprehend that such force and effect should not be given to it. It may very well be that conditions have existed which furnished a legal excuse to the railroad company for not complying therewith. It was competent for the commissioner giving

the consent to waive exact compliance with its terms. It is possible that the persons seeking to take advantage of the forfeiture should themselves be estopped from insisting upon it; and as the defendant may make a case which will relieve it from the condition thus imposed, legal proceedings are necessary to declare the existence of the forfeiture. (*Matter of Kings County Elevated R. R. Co.*, *supra*, 120.) But as the papers in opposition to this motion show no excuse, and as *prima facie* under the operation of the terms of the condition the defendant has no right in the street, it follows that a case was made which entitled the plaintiff to have the temporary injunction continued pending the action.

We are also of the opinion that the defendant has not met the affidavits of the plaintiff which specify in detail wherein the defendant has failed to obtain the consent of the owners of two-thirds in value of the property bounded upon the street where it is engaged in constructing its road. The defendant was charged with the duty of obtaining these consents, and it must be presumed to be possessed of knowledge and of the consents which gave it the right to construct the railroad in this street. As it had no right or authority to construct until it obtained such consents, when challenged as to its right in this respect, it imposes no harsh rule to compel it to produce and clearly establish such authority. The affidavits of the defendant in this respect do not fairly meet the case made by the plaintiff. Its answer is mainly in the nature of an argument based upon its right to have certain public property credited to it in the valuation, the confusion existing in the assessment roll, and an attack upon the plaintiff's figures from which her conclusion is derived. Giving full force to all that has been said, we are unable to determine from the papers whether the defendant has the consent of the requisite number of property owners upon this street authorizing it to construct its road; and in view of the direct statement contained in the plaintiff's affidavit, we think it was incumbent upon the defendant to make clear proof of its authority in the premises. In view of the fact that the road has been constructed beyond the premises of the plaintiff, we should have been inclined to the view that all of her rights would have been protected from further injury by restraining the defendant in the operation of its road; but taking into consideration the condition and its effect as we have already dis-

cussed, we think a case was made where the plaintiff was entitled to the continuance of the injunction pending the trial of the action.

It follows that the order should be reversed and the temporary injunction be continued during the pendency of the action.

All concurred.

Order reversed, with ten dollars costs and disbursements, and injunction continued, with ten dollars costs to abide the event.